UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **RICHARD PHILIP KAUFMAN and MICHAEL NORLEY,**<br><br>Plaintiffs,<br><br>v.<br><br>**INTERNAL REVENUE SERVICE, et al.,**<br><br>Defendants. | Civil Action No. 10-cv-1610 (RLW) |

### MEMORANDUM OPINION

*Pro se* Plaintiffs Richard Philip Kaufman and Michael Norley have filed this "Complaint on Contract and Promise on Value (Sweat Equity) Loaned" purportedly as relators on behalf of "The People of the State of Pennsylvania." Plaintiffs have named more than 60 Defendants, including the Internal Revenue Service ("IRS"), the Secretary of the Treasury, the chairman of the Federal Reserve, the entire Pennsylvania state court system, Pennsylvania state judges, federal judges and federal prosecutors. Plaintiffs make wholesale attacks on the legitimacy of the IRS, the Federal Reserve Bank, the U.S. treasury and system of currency, some state and federal courts, and other individuals or entities that Plaintiffs believe to be "acting as agents" for the IRS.

Defendants have moved to dismiss the Complaint under Rules 12(b)(1), (2), (5) and (6). For the reasons set forth below, this Court lacks subject matter jurisdiction to entertain Plaintiffs' suit. Accordingly, Defendants' Motions to Dismiss (Docket Nos. 4, 11, 52, 74, 75, & 76) are

1

granted. Moreover, because Plaintiffs have abused the litigation process through their numerous improper filings, including signing and filing counterfeit orders as "common law magistrates" or "private attorney generals," Plaintiffs' CM/ECF privileges are revoked and they are enjoined from submitting any additional filings in this case without prior leave of the Court.

## FACTUAL BACKGROUND

### A. Plaintiffs' Previous Federal and State Cases

Although Plaintiffs are proceeding *pro se*, they are no strangers to the court system. Residents of the Commonwealth of Pennsylvania, Plaintiffs have between them filed at least 15 *pro se* suits in federal district and bankruptcy courts over the last ten years, almost all of which have been dismissed.[1] Some of the federal cases, moreover, detail the numerous state cases they have filed to attempt to prevent adverse action against them. It appears that, whenever Plaintiffs are unhappy with the result of a case (including criminal prosecutions), they file a new lawsuit—often in a different court—suing the judge, court staff, lawyers, and/or other government officials involved in the previous case. Their strategy appears, at least in part, to challenge the authority

---

[1] See In re Kaufman, No. 08-bk-11087 (Bankr. E.D. Pa. filed Feb. 14, 2008); In re Kaufman, No. 08-bk-13185 (Bankr. E.D. Pa. filed May 15, 2008); Kaufman v. U.S., No. 6-mc-146 (E.D. Pa filed Aug. 1, 2006); Norley, et al. v. Wolfe, et al., No. 09-cv-1129 (N.D. N.Y. filed Sept. 20, 2009); Norley v. Landis, et al., No. 10-cv-5893 (E.D. Pa. filed Oct. 29, 2010); Norley v. Platt, et al., No. 00-cv-3695 (E.D. Pa. filed July 21, 2000); Norley v. Welsh, et al., No. 03-cv-5596 (E.D. Pa. filed Oct. 7, 2003); Norley v. State of Pennsylvania, et al., No. 03-cv-6039 (E.D. Pa. filed Oct. 31, 2003); Norley v. State of Pennsylvania, et al., No. 05-cv-5311 (E.D. Pa. filed Oct. 7, 2005); Norley v. East Bradford Township, No. 06-cv-2038 (E.D. Pa. filed May 12, 2006); Norley v. Norley, et al., No. 06-cv-3016 (E.D. Pa. filed July 10, 2006); In re Norley, No. 03-18613 (Bankr. E.D. Pa. filed June 4, 2003); In re Norley, No. 04-33025 (Bankr. E.D. Pa. filed Sept. 24, 2004); In re Norley, No. 09-18782 (Bankr. E.D. Pa. Nov. 18, 2009); In re Norley, No. 10-10436 (Bankr. E.D. Pa. filed Jan. 21, 2010).

of those who have taken action against them. See Order at 3, n.1, Norley, et al. v. Wolfe, et al., No. 09-cv-1129 (N.D.N.Y. Jan. 13, 2010), ECF No. 3 (demanding credentials of clerk of court and judges that had failed to enter judgment sought by plaintiffs; in dismissing case, Court stated that "it is cases like this one that delay the resolution of other cases, and that contribute to this District's dubious distinction has having . . . one of the longest median times to disposition for civil cases . . . ."); see also Complaint, Norley v. State of Pennsylvania, et al., No. 05-cv-5311 (E.D. Pa. Oct. 7, 2005) (suing and challenging authority of judges, sheriffs and other government officials who had taken adverse action against Norley in previous cases).

Plaintiffs have both been reprimanded for successive bankruptcy filings in the U.S. Bankruptcy Court for the Eastern District of Pennsylvania seeking to, among other things, stop the foreclosure and sheriff's sales of their properties. Kaufman has already been ordered not to file any further bankruptcy cases without prior leave of that court. See Order, In re Kaufman, No. 08-13185 (Bankr. E.D. Pa. Aug. 27, 2008), ECF No. 38. In Plaintiff Norley's most recent bankruptcy filing, Norley "repeatedly" admitted that the sole reason he filed that case and "all but one of his prior bankruptcy cases was to prevent the [local municipality] from moving forward with the Sheriff's Sale of his real property or to stop other actions by [that municipality]." See Order at 7-8, In re Norley, No. 10-10436 (Bankr. E.D. Pa. Mar. 30, 2010), ECF No. 33. After holding an evidentiary hearing at which Norley was present, the Court ultimately found Norley had filed his bankruptcy case in bad faith, dismissed his case, and enjoined any future bankruptcy filings without leave of the court "to prevent [Norley's] continued abuse of the bankruptcy process." Id. at 7-10.

**B. The Complaint and Filings in this Case**

In August 2010, Plaintiff Kaufman was indicted in the U.S. District Court for the Eastern District of Pennsylvania for, among other things, failure to file tax returns in violation of 26 U.S.C. § 7203, attempt to obstruct lawful function of Internal Revenue Service in violation of 26 U.S.C. § 7212(a), and making false claims in violation of 18 U.S.C. § 287. See Indictment, United States v. Kaufman, No. 10-cr-553 (E.D. Pa. Aug. 24, 2010), ECF No. 1. Approximately one month after he was indicted, Kaufman, along with Norley, filed this suit against the IRS and other Defendants "acting as agents" for the IRS.

In this case, Plaintiffs allege that Defendants, particularly the IRS, have fraudulently induced Plaintiffs into "involuntary servitude" (¶¶ 21, 30). Plaintiffs allege, among other things, that: 1) the IRS operates in the United States without disclosing that it is a "private" or "foreign usury" debt collector, and an "offshore trust maintained in Puerto Rico" that fraudulently operates in the "secret collection of usury" (¶¶ 11-12; 23-4); 2) the Internal Revenue Code is applicable only to "those who elect to volunteer to submit" to it (¶ 23(k)); and 3) that the IRS and other Defendants have "converted Plaintiffs' value sweat equity to private money for enrichment of Defendants" (¶¶ 30-2). Plaintiffs appear to allege that they are immune from the power of the IRS to impose and collect taxes (¶ 59).

Plaintiffs allege a wide conspiracy, including the IRS and the other Defendants, who have "routinely aided and abetted" the IRS (¶¶ 23(o), 30, 53). In addition to the IRS, the alleged

4

conspiracy includes:[2] 1) Secretary of the Treasury Timothy Geithner; 2) Chairman of the Federal Reserve Benjamin Bernanke; 3) the Depository Trust Company; 4) the Delaware County, Pennsylvania court in which criminal charges for attempted homicide and aggravated assault are currently pending against Norley and Kaufman (Magisterial District Court 32-2-49);[3] 5) the arresting officer on those state criminal charges (Erjon Mollaj); 6) federal prosecutors representing the United States in the pending federal criminal tax case against Kaufman (Zane David Memeger and Joan E. Burnes); 7) the IRS special agents investigating Kaufman (Jeffrey S. Brown and Joseph C. Keiper); 8) federal judges who have presided over Kaufman's criminal prosecution and a previous civil case Norley filed (Judges Eduardo C. Robreno, Jr., M. Faith Angell, J. Curtis Joyner ); and 9) the Clerk of the U.S. District Court for the Eastern District of Pennsylvania (Michael E. Kunz).[4]

---

[2]     Although Plaintiffs did not always specify what role some of the Defendants have had in their prior cases, their identities are revealed through review of the dockets of Plaintiffs' previous cases or through Defendants' motions to dismiss.

[3]     See Comm. v. Kaufman, No. CP-23-CR-0001977-2011 & Comm. v. Norley, No. CP-23-CR-0001978-2011 currently pending in the Delaware County, PA Court of Common Pleas.

[4]     After they filed their initial Complaint, Plaintiffs sought pursuant to Rule 19(a) to add at least 40 new defendants through "Notices of Joinder" filed on November 19, 2010 (Docket No. 73), February 4, 2011 (Docket No. 91), and April 7, 2011 (Docket No. 112). The new defendants sought to be added through these notices include: 1) all of the Pennsylvania state courts; 2) a state judge who had presided over Norley's previous criminal trial and whom Norley had previously sued (William Mahon); 3) the judge presiding over Kaufman's current federal criminal case (Juan Sanchez); and 4) the United States District Courts and Courts of Appeal.

Construing Plaintiffs' "Notices of Joinder" as Motions for Joinder under Rule 19(a), this Court finds that the defendants' presence is unnecessary to the resolution of this suit. See FED. R. CIV. P. 19(a); Western Maryland Ry. Co. v. Harbor Ins. Co., 910 F.2d 960, 960 (D.C. Cir. 1990) ("When a party to a federal lawsuit moves to join a nonparty resisting joinder, the district court must answer three

Although Plaintiffs cite many constitutional and statutory provisions, it is often unclear which claims Plaintiffs are asserting and what authority justifies the relief they seek. Because Plaintiffs' *pro se* Complaint must be construed liberally, this Court has carefully read Plaintiffs' Complaint and attempted to decipher the claims therein. The Court assumes that Plaintiffs are attempting to assert: 1) breach of contract; 2) fraud; 3) constitutional claims under the Fifth Amendment for improper takings (¶¶ 23(o), 28(b), 54); 4) a claim under the Racketeer Influenced Corrupt Organizations Act, 18 U.S.C. §§ 1961 et seq. (referred to as simply a "conspiracy" in Plaintiffs' complaint) (¶ 53); 5) claims for declaratory relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202 (2006); and 6) claims for injunctive relief.

At its core, Plaintiffs' Complaint is a challenge to IRS' right to assess and collect taxes against them. It is also clear from the ultimate relief sought by Plaintiffs that one of—if not the—main purposes of Plaintiffs' suit is to frustrate the government's collection of taxes and to enjoin any criminal and civil prosecutions against them. Plaintiffs demand, *inter alia*, that: 1) Defendants "provide a full independent audit and accounting" of the IRS, DTC, DTCC, and Magisterial District Court to account for, among other things, "all books and records relating to legal

---

questions: Should the absentee be joined? If the absentee should be joined, can the absentee be joined? If the absentee cannot be joined, should the lawsuit proceed without her nonetheless?"); see also 7 WRIGHT, MILLER & KANE, FEDERAL PRACTICE & PROCEDURE § 1604 (3d ed. 2001) (stating that "the real purpose of this rule is to bring before the court all persons whose joinder would be desirable for a just adjudication of the action . . . ."). Accordingly, all such Motions for Joinder are denied and all motions to dismiss filed by any of the defendants sought to be added through Plaintiffs' "Notices of Joinder" will be denied as moot. (Docket Nos. 85, 89 and 137).

Even assuming Plaintiffs had sought to amend their Complaint under Rule 15, such amendments would have been denied as futile for the reasons set forth in this Opinion. See James Madison Ltd. v. Ludwig, 82 F.3d 1085, 1099 (D.C. Cir. 1996) (stating that Court may deny a motion to amend a complaint as futile if the proposed complaint would not survive a motion to dismiss).

fiction taxpayer accounts hypothecated from Plaintiffs' equity and credit, the origin of and authority for hypothecating the said accounts"; 2) a protective order be issued to immunize Plaintiffs from process from U.S. agencies, particularly the IRS; 3) all civil and criminal actions and legal action be enjoined against Plaintiffs; and 4) Defendants be ordered to "subscribe" to and certify as true Plaintiffs' "Bill of Particulars," a number of questions seeking to have Defendants admit many of Plaintiffs' claims and theories. (Compl. at 24-25).

Plaintiffs also claim the power to "issue orders to process this suit" (¶ 47). Accordingly, Plaintiffs have taken it upon themselves to issue orders in this case as "common law magistrates" and "private attorney generals." Plaintiffs have flooded this case with numerous such filings, such as a bond which Plaintiffs have filed in the amount of "One Trillion, Three Hundred Billion Dollars" as "consideration" apparently to dismiss the state criminal prosecutions against Plaintiffs and as "DEMAND TO CLOSE THE PUBLIC DEBT DOLLAR FOR DOLLAR [sic]" (Docket No. 109).[5]

## ANALYSIS

### A. Standard of Review

This Court is obligated to dismiss an action, and may do so *sua sponte*, if it determines "at any time" that it lacks subject matter jurisdiction. FED. R. CIV. P. 12(h)(3). In deciding a

---

[5] This is not the first time Kaufman has been accused of this practice. In one of Kaufman's bankruptcy cases, the trustee claimed that Kaufman attempted to send him a "bonded promissory note" in the amount of $5 million directing the trustee to pay all his creditors in a bankruptcy case. See Chapter 13 Standing Trustee's Motion to Dismiss with Prejudice at 1-11, In re Kaufman, No. 08-13185 (Bankr. E.D. Pa. July 21, 2008), ECF No. 22. Moreover, in Kaufman's pending federal criminal tax case, the Indictment details how Kaufman submitted false and fraudulent documents entitled "Registered Bond for Discharge of Debt" and "bonded promissory notes" to the IRS attempting to discharge his debt. See Indictment at 3-6, United States v. Kaufman, No. 10-cr-553 (E.D. Pa. Aug. 24, 2010), ECF No. 1.

motion to dismiss for lack of subject matter jurisdiction, a district court may consider materials outside the pleadings.  See Jerome Stevens Pharm., Inc. v. Food & Drug Admin., 402 F.3d 1249, 1253 (D.C. Cir. 2005).  Despite the favorable inferences a plaintiff receives on a motion to dismiss, "[u]nder Rule 12(b)(1), it is to be presumed that a cause lies outside the federal court's limited jurisdiction unless the plaintiff establishes by a preponderance of the evidence that the Court possesses jurisdiction."  Ramer v. United States, 620 F.Supp.2d 90, 95-6 (D.D.C. 2009) (internal citations and quotation marks omitted).  Moreover, "[w]hile the complaint is to be construed liberally, the Court need not accept factual inferences drawn by plaintiffs if those inferences are not supported by facts alleged in the complaint, nor must the Court accept plaintiffs' legal conclusions."  See Speelman v. United States, 461 F.Supp.2d 71, 73 (D.D.C. 2006).  "Plaintiffs' factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim."  Wightman-Cervantes v. Mueller, 750 F.Supp.2d 76, 78 (D.C. 2010) (internal quotation marks and citations omitted).

Although a *pro se* Plaintiff's complaint is held to a less stringent standard than formal pleadings drafted by lawyers, this does not give a *pro se* plaintiff license to ignore the Federal Rules of Civil Procedure or expect the Court to decide what claims a plaintiff may or may not want to assert.  See Redwood v. Council of the District of Columbia, 679 F.2d 931, 933 (D.C.Cir. 1982); Haines v. Kerner, 404 U.S. 519, 520 (1972); Jarrell v. Tisch, 656 F.Supp. 237, 239 (D.D.C. 1987).  Moreover, although *pro se* complaints are held to a less stringent standard, "even a *pro se* plaintiff bears the burden of establishing that the Court has subject matter

jurisdiction." Curran v. Holder, 626 F.Supp.2d 30, 33 (D.D.C. 2009) (internal quotation marks and citations omitted).

### B. Lack of Jurisdiction for Patently Insubstantial Claims

As this Circuit has recently held, a "complaint may be dismissed on jurisdictional grounds when it is patently insubstantial presenting no federal question suitable for decision." See Tooley v. Napolitano, 586 F.3d 1006, 1009 (D.C. Cir. 2009) (quoting Best v. Kelly, 39 F.3d 328, 330 (D.C. Cir. 1994)); see also Hagans v. Levine, 415 U.S. 528, 536-37 (1974) ("[F]ederal courts are without power to entertain claims within their jurisdiction if they are so attenuated and unsubstantial as to be absolutely devoid of merit, wholly insubstantial, [or] obviously frivolous . . . ."). Dismissal is appropriate, therefore, when the claims are "flimsier than doubtful or questionable . . . essentially fictitious." Tooley, 586 F.3d at 1009 (internal quotation marks omitted). Patently insubstantial claims include those which are "'essentially fictitious' or advance 'bizarre conspiracy theories,' 'fantastic government manipulation of [one's] will or mind' or some type of 'supernatural intervention.'" Wightman-Cervantes, 750 F.Supp.2d at 79 (quoting Best, 39 F.3d at 330-31).

In this case, Plaintiffs allege a wide conspiracy between the IRS and Defendants (many of whom are judges, law enforcement or other government officials who have been involved in Plaintiffs' Pennsylvania cases), stating that Defendants "have converted Plaintiffs' value sweat equity to private money by secretly issuing and trading bonds and similar private instruments hypothecated against Plaintiffs' future labor for enrichment of Defendants, thereby subjecting Plaintiffs to involuntary servitude." (¶ 30). Plaintiffs also allege that:

- The IRS "is not registered as a foreign corporation or otherwise to do business in or with the District of Columbia, the State of Pennsylvania, the Secretary of State of any of the States of the Union, the United States of America perpetual Union, or with the United State [sic] Securities and Exchange Commission." (¶ 36);

- The IRS "as principal money trafficker" for Defendants "has enticed and continues to entice the One People into condemning themselves to eternal purgatory by coercing and deluding them into electing to volunteer to be U.S. subjects that are required to pray to the United States judiciary in violation of the law of Nature's God." (¶ 35);

- The IRS "as a collector of a fictitious debt under public policy" "has served as the primary funding arm for global terrorism waged for generations against the One People, converting honorable sweat equity and future such value into sustained economic warfare to maintain the private credit money monopoly." (¶ 34);

- "Defendants jointly and severally present a clear and often lethal danger to the One People." (¶ 34); and

- Defendants acting "in agency to foreign usury debt collector Defendant IRS" "are engaged in an ongoing racketeering enterprise with intent to entice, deceive and force under color of law the One People, Relators in particular, to elect to use Defendants' private money system of currency and corporate regulation for the ultimate enrichment of Defendants . . . ." (¶ 53).

As described before, Plaintiffs have gone so far as to submit a bond in the amount of "one trillion dollars" to persuade the Court to discharge debt or issue judgments in Plaintiffs' favor. The Court has carefully reviewed Plaintiffs' Complaint and is satisfied that this case represents the type of

"bizarre conspiracy theories," "frivolous," and "essentially fictitious" claims that are patently insubstantial and present no federal question suitable for decision." Wightman-Cervantes, 750 F.Supp.2d at 79-80; see also Tooley, 586 F.3d at 1009-10; Curran, 626 F.Supp.2d at 33-34. As such, this Court dismisses Plaintiffs' Complaint under Rules 12(h)(3) and 12(b)(1).[6]

### C. The Court Lacks Jurisdiction to Grant Plaintiffs the Relief They Seek

For the reasons already stated, this Court lacks subject matter jurisdiction over Plaintiffs' patently insubstantial Complaint. Even assuming (as this Court will do given Plaintiffs' *pro se* status), however, that Plaintiffs' claims were not subject to dismissal for being patently insubstantial, dismissal would still be appropriate because this Court lacks subject matter jurisdiction to grant Plaintiffs the relief they seek.

Plaintiffs seek extraordinary injunctive and declaratory relief based on their claims that they are not subject to federal taxes. Plaintiffs demand, *inter alia*, that: 1) Defendants "provide a full independent audit and accounting" of the IRS, DTC, DTCC, and Magisterial District Court; 2) a protective order be issued to immunize Plaintiffs from process from U.S. agencies, particularly the IRS; 3) all civil and criminal actions and legal action be enjoined against Plaintiffs; and 4) Defendants

---

[6] The Court need not reach the many other bases for dismissal that Defendants have advanced, but will point out that, even assuming that this Court had subject matter jurisdiction over this case, Plaintiffs have failed to meet the "plausibility" standard set forth to survive a motion to dismiss under Rule 12(b)(6). As the U.S. Supreme Court has held, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" See Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S.Ct. at 1949.

be ordered to "subscribe" to and certify as true Plaintiffs' "Bill of Particulars," a number of questions seeking to have Defendants admit many of Plaintiffs' claims and theories. (Compl. at 24-25).

First, to the extent that Plaintiffs seek it, this Court lacks subject matter jurisdiction to grant any declaratory relief. The power to grant declaratory relief in federal courts is governed by the Declaratory Judgment Act, 28 U.S.C. § 2201. The Act provides:

> In a case of actual controversy within its jurisdiction, *except with respect to Federal taxes other than actions brought under section 7428 of the Internal Revenue Code of 1986* . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

28 U.S.C. § 2201(a) (emphasis added).[7] Given the clear language of the Act, this Court lacks authority to grant Plaintiffs any declaratory relief "with respect to federal taxes." Id.; see Dye v. United States, 516 F.Supp.2d 61, 73 (D.D.C. 2007); Falck v. Internal Revenue Service, 2007 WL 1723675, at *3 (D.D.C. 2007); Speelman, 461 F.Supp.2d at 75. Accordingly, because Plaintiffs seek judgment declaring them immune or exempt from the assessment or collection of federal taxes, this Court is without jurisdiction to grant that relief and those claims would be dismissed pursuant to Rule 12(b)(1).

Plaintiffs' claims for injunctive relief are also fruitless. Under the Tax Code's Anti-Injunction Act, "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against

---

[7]   Section 7428 of the Internal Revenue Code does not apply here.

whom such tax was assessed." 26 U.S.C. § 7421; Foodservice & Lodging Institute, Inc. v. Reagan, 809 F.2d 842, 844-45 (D.C. Cir. 1987).[8] The purpose of this provision is to "withdraw jurisdiction from the state and federal courts to entertain suits seeking injunctions prohibiting the collection of federal taxes." Enochs v. Williams Packing & Navigation Co., 370 U.S. 1, 5 (1962).[9] "It extends not only to the assessment or collection of taxes, but also the entire process involved in enforcing the revenue laws." Justin v. United States, 607 F.Supp.2d 73, 77 (D.D.C. 2009) (internal citation omitted). Courts should construe the Act broadly to protect the government's "need to assess and collect taxes as expeditiously as possible with a minimum of pre-enforcement interference." Keese v. United States, 632 F.Supp. 85, 89 (S.D. Tex. 1985) (internal citations and quotation marks omitted). Accordingly, because Plaintiffs have brought this suit "for the purpose of restraining the assessment or collection" of federal taxes, this Court is without jurisdiction to grant Plaintiff any of the injunctive relief it seeks. This includes Plaintiffs' requests for an audit and accounting of their "equity" and also their request to enjoin "process" against them from the United States and IRS. See Shannon v. United States, 521 F.2d 56, 58 (9th Cir. 1975), cert. denied, 424 U.S. 965 (1976) (holding that Anti-Injunction Act not only prohibits suits to restrain the collection or assessment of taxes, but also prevents courts from granting such equitable relief); Music Deli & Groceries, Inc. v. Internal Revenue Service, 781 F.Supp. 992, 998 (S.D.N.Y. 1991) (district court lacked authority to order IRS to perform

---

[8] Although there are some exceptions to the rule set out in Section 7421 allowing the Court to take certain limited action, Plaintiffs have neither relied on any of those narrow exceptions nor pled facts which would allow this Court to determine whether any of those exceptions apply.

[9] Plaintiffs have neither pled nor fall into any of the narrow judicial exceptions to this categorical rule. See Enochs, 370 U.S. at 7; Dye, 516 F.Supp.2d at 74, n.7.

accounting despite allegation that IRS illegally seized owner's business records); Latch v. United States, 842 F.2d 1031, 1033 (9th Cir. 1988) (stating that there is "no statute that gives federal district courts jurisdiction over suits for tax accounting."). Because the Court has no subject matter jurisdiction to grant the injunctive relief plaintiffs seek, those claims would also be subject to dismissal.

Finally, Plaintiffs ask that this Court enjoin all civil and criminal actions against Plaintiffs pending this lawsuit. This Court, however, is a court of limited jurisdiction and does not have the authority to review other federal district courts or state courts or stay any and all cases pending against Plaintiffs. See 28 U.S.C. §§ 1331, 1332 (general jurisdiction provisions); § 2283 ("A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."); Fleming v. United States, 847 F.Supp. 170, 172 (D.D.C. 1994), cert. denied, 513 U.S. 1150 (1995); Leitner v. United States, 725 F.Supp.2d 36, 43 (D.D.C. 2010) (holding that court lacks jurisdiction to grant injunctive and declaratory relief to enjoin Plaintiff's criminal tax proceedings or vacate Plaintiff's indictment in another district). Plaintiffs' claim, therefore, falls outside of this Court's limited jurisdiction.

### D. Plaintiffs' Abuse of the Litigation Process

On November 22, 2010, this Court granted Plaintiffs' Motion for CM/ECF accounts and passwords. Since that time, Plaintiffs have flooded this docket with numerous improper and unintelligible filings. As described briefly above, these include: 1) purported judgments, notices or "decree[s]" which Plaintiffs appear to be trying to pass off as binding Orders, having signed

some of them as "magistrate," "common law magistrate" or "private attorney general" (Docket Nos. 110, 111, 117, 118, 123, 124, 128, 129, 130, 131, 136); and 2) notices, including Plaintiffs' submission of a "One Trillion Dollar" bond.  With these improper filings, in which Plaintiffs attempt to pay debts, deposit bonds, curry favor with the Court or direct this Court to settle Plaintiffs' debts or return rulings favorable to Plaintiffs. (Docket Nos. 86, 93, 109, 113, 114, 119, 120, 121, 126, 127, 132, 133, 134).

It is well settled that this Court "may employ injunctive remedies to protect the integrity of courts and the orderly and expeditious administration of justice." Urban v. United Nations, 768 F.2d 1497, 1500 (D.C. Cir. 1985).  Having considered Plaintiffs' conduct in this case and the entire record, it is apparent that, through their improper filings, Plaintiffs are impeding the administration of justice and abusing their electronic filing privileges.  Plaintiffs are admonished that only this Court—and not Plaintiffs—has the authority to issue orders in this case. Accordingly, the Clerk of the Court is ordered to immediately revoke Plaintiffs' CM/ECF accounts and passwords so that the Clerk may inspect any future submissions prior to entering them on the docket.  Moreover, the improper filings described above shall be stricken from the record.  (Docket Nos. 86, 93, 109, 110, 111, 113, 114, 117, 118, 119, 120, 121, 123, 124, 126-134, 136).

Finally, Plaintiffs are hereby enjoined from filing further submissions in this case without leave of Court.  The Clerk shall not accept for filing any subsequent submissions (other than Plaintiffs' notice of appeal, if any) that do not include a separate motion for leave to file. Plaintiffs are admonished not to file any additional impertinent, improper, or frivolous

submissions lest they be subjected to additional sanctions, including further restrictions on their filing privileges in this Court.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs' Complaint is DISMISSED, Plaintiffs' CM/ECF passwords are revoked and they are enjoined from making any further filings in this case without leave of the Court.  Because Plaintiffs' Complaint must be dismissed, Plaintiffs' pending motions, located at Docket Nos. 34, 35, 45, 56, 57, 81, 88, 90 and 92, are denied as moot.  An Order accompanies this Memorandum.

SO ORDERED.

Date: May 26, 2011                                   /s/
                                         ROBERT L. WILKINS
                                         United States District Judge